UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

W.J. DEUTSCH & SONS LTD.,

        Petitioner,

    -v-                                    No.  1:21-cv-11003-LTS

DIEGO ZAMORA, S.A., et al.,

        Respondents.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Petitioner W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wines & Spirits

("Petitioner" or "Deutsch"), seeks an order vacating an international arbitration award issued in

2021 in favor of Respondents Diego Zamora, S.A., and Bodegas Ramon Bilbao, S.A.

("Respondents" or "Zamora"), alleging that the award was issued in manifest disregard of the

law.  (Docket entry no. 4 (the "Petition").)  Two motions are now before the Court: Zamora's

motion to dismiss the Petition (docket entry no. 47); and Deutsch's cross-motion for alternative

service nunc pro tunc (docket entry no. 46).  The Court has jurisdiction of this action pursuant to

9 U.S.C. section 203.  The Court has considered carefully the parties' submissions and

arguments and, for the following reasons, the Court grants Deutsch's cross-motion for retroactive

authorization of alternative service, and grants Zamora's motion to dismiss the Petition on the

merits.


BACKGROUND

        The following factual recitation is drawn from the Amended Petition and from

findings of fact underlying the prior arbitration awards.  (See docket entry nos. 31-1, 31-4, and

44-8.)  Deutsch is an American company that imports, distributes, and markets wine products; Zamora is a Spanish wine manufacturer.  From 2009 through 2018, Deutsch distributed Zamora's wines throughout the United States.  This business relationship was governed by two contracts—a Distribution Agreement and an LLC Agreement.  Under the Distribution Agreement, the parties agreed to certain "purchase objectives" under which Deutsch agreed to purchase from Zamora a certain quantity of wines annually.  (Docket entry no. 31-1 ¶ 14, Deutsch's Amended Petition ("Am. Pet.").)  In early 2018, Zamora alleged that Deutsch had failed to meet its contractual purchase objectives and sent Deutsch a termination notice indicating that it planned to end the parties' distribution relationship.  (Am. Pet. ¶ 18.)  As justification, Zamora cited a portion of the Distribution Agreement that would give Zamora the right to terminate the contract if Deutsch failed to meet at least 90% of the purchase objectives for two consecutive years—Zamora asserted that Deutsch had failed to meet the objectives during fiscal years 2017 and 2018.  (Id. ¶ 19.)  Deutsch disputed Zamora's allegation of insufficient purchases.  The dispute centered on how purchases of one particular wine brand, Ramon Bilbao, should be quantified for purposes of the purchase objectives.  (Id. ¶ 25.)  Deutsch also contended that Zamora's failure to transfer a certain trademark to Deutsch in 2018 constituted a breach of the LLC Agreement.  (Id. ¶ 20; docket entry no. 31-4 at 10.)  While these disputes were ongoing, the parties continued to perform their other contractual obligations as normal.  (Am. Pet. ¶ 21.)

In April 2018, Deutsch commenced an arbitration proceeding against Zamora before the American Arbitration Association ("AAA"), seeking to resolve the disputes regarding the purchase objectives and the transfer of the trademark, and contending that Zamora was in breach of contract.  (Am. Pet. ¶ 22.)  Zamora asserted counterclaims, arguing that it had no

obligation to transfer the trademark, and that it had rightfully terminated the contract due to Deutsch's failure to meet purchase objectives.  (Id. ¶¶ 22-23.)  In June 2019, after the arbitration hearing had concluded (but before the panel had rendered any decision), Zamora issued a second termination notice to Deutsch, asserting that Deutsch had failed to meet its purchase objectives during fiscal years 2018 and 2019 as to the Ramon Bilbao wines.  (Id. ¶¶ 26-28.)  This time, Zamora ceased all shipments of wines to Deutsch.  (Id.)

On December 19, 2019, the arbitration panel issued a decision (docket entry no. 31-4 (the "2019 Award")) which concluded, based on Deutsch's evidence of the quantities of wine it had purchased, that Deutsch had not failed to meet its purchase objectives during 2017 and 2018.  (Id. at 29.)  The panel further concluded that Zamora had breached the LLC Agreement by failing to transfer the trademark, and that Zamora was not relieved of its obligations under the contract.  (Id. at 36-40.)  The panel ordered Zamora to transfer the trademark but denied Deutsch's request for damages.  (Id.)

In August 2020, Deutsch initiated a second arbitration proceeding against Zamora (also before the AAA), requesting that the panel (1) affirm that Zamora's 2018 termination notice was invalid; (2) adjudicate the validity of Zamora's 2019 termination notice; (3) require Zamora to buy out Deutsch's membership interest in the trademark holding company (pursuant to the LLC Agreement); and (4) award damages to Deutsch.  (Am. Pet. ¶¶ 49-50; docket entry no. 44-8 ("2021 Award") at 1-2.)  Zamora opposed the motions and moved to dismiss.  (Id.)  The panel issued a decision on September 23, 2021 (the "2021 Award"), which denied Deutsch's motions and granted in part Zamora's motion.  (Id.)  The 2021 panel concluded that: (1) although Zamora had issued an invalid termination notice in 2018, the breach did not entitle Deutsch to any damages because the breach was cured by the prior panel's order of specific performance

and because the parties continued to perform under the contract; and (2) Zamora's 2018

termination notice did not trigger Zamora's contractual obligation to buy out Deutsch's

membership interest in the trademark holding company (pursuant to the LLC Agreement).  (2021

Award at 1-3.)  The 2021 panel also rejected Deutsch's argument that Zamora's 2019

termination notice should be declared invalid on res judicata grounds, holding that the prior

panel had not made a determination about the 2019 termination notice.  (Id. at 3-4.)  Because

certain "[i]ssues of fact" still remained "as to the validity of" Zamora's 2019 termination

notice—such as how the sale of the Roman Bilbao wine should be quantified towards the

purchase objectives—the panel concluded that further proceedings were necessary.  (Id. at 4-5.)

On October 8, 2021, Deutsch wrote to the second panel to seek clarification of certain

findings made in the 2021 Award.  (Am. Pet. ¶¶ 60-61; docket entry no. 44-9.)  The panel denied

Deutsch's request (which it treated as a motion for re-argument), stating that its decision had

been "sufficiently clear," but nevertheless provided some additional explanation of which matters

had been already determined in the 2021 Award and which matters "the tribunal expects to try at

the upcoming hearings."  (Am. Pet. ¶¶ 60-63; docket entry no. 66 ("Related Order").)  The

arbitration proceeding between Deutsch and Zamora remained ongoing as of the time this civil

action was commenced.  (Am. Pet. ¶ 1.)

The instant action was commenced on December 22, 2021, when Deutsch filed

with this Court a Petition to Vacate, contending that the second arbitration panel acted in

manifest disregard of the law when it issued the 2021 Award in favor of Zamora.  (Docket entry

nos. 4 and 6.)  Zamora subsequently filed a motion to dismiss (docket entry no. 47), contending

that the Petition should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because (1)

Deutsch failed to timely serve the Petition upon Zamora;[1] and (2) the 2021 Award was legally and procedurally proper.  Deutsch opposes the motion to dismiss (docket entry no. 45) and has also filed a cross-motion for service, requesting that the court approve alternative service on Zamora nunc pro tunc (docket entry no. 46).  This Opinion addresses both the motion to dismiss and the cross motion concerning service.

DISCUSSION

Motion to Dismiss for Lack of Personal Jurisdiction

The primary basis of Zamora's dismissal motion is allegedly insufficient service of process.  Although Zamora articulates its motion as one brought under Federal Rule of Civil Procedure 12(b)(6), the Court interprets Zamora's service arguments as seeking dismissal under Rule 12(b)(5)—which is the proper vehicle for "challenging the sufficiency of service of process."  Koulkina v. City of New York, 559 F. Supp. 2d 300, 310 n. 9 (S.D.N.Y. 2008); see also Dickson v. Schenectady Police Dep't, No. 121-CV-0825-LEK-DJS, 2022 WL 1091615, at *7 n. 6 (N.D.N.Y. Apr. 12, 2022) (treating motion to dismiss as Rule 12(b)(5) motion because Rule 12(b)(5) is "the proper method for challenging the mode of delivery of a summons and complaint").  When a defendant moves to dismiss for insufficient service of process under Rule 12(b)(5), "the plaintiff bears the burden of establishing that service was sufficient."  Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010).  "In considering a motion to dismiss pursuant to Rule 12(b)(5), the Court may look beyond the pleadings, including to affidavits and supporting

---

[1]     As explained below, although Zamora represents that it seeks dismissal only under Rule 12(b)(6), the Court interprets Zamora's service arguments as seeking dismissal under Rule 12(b)(5), which is the proper vehicle for challenging the sufficiency of service of process.

materials, to determine whether service was proper."  Vega v. Hastens Beds, Inc., 339 F.R.D. 210, 215 (S.D.N.Y. 2021).

The Court has jurisdiction of the Petition pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which is implemented in United States law under Chapter 2 of the Federal Arbitration Act ("FAA").  See 9 U.S.C. §§ 201-208.  A petition to confirm or vacate an arbitration award is covered by the Convention if four requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope."  Dumitru v. Princess Cruise Lines, Ltd., 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (citation omitted).  The parties here provide no analysis of the applicability of the Convention, but, based on the facts contained in the pleadings, it does appear that the Convention applies. The parties' agreement to submit to arbitration was contained in a written agreement (docket entry no 30-4 (the "Distribution Agreement"), at 2-3); the agreement provided for arbitration to occur in New York; the subject matter is commercial, as the dispute centers on the importation, sale, and distribution of products; and the dispute is not wholly domestic in scope, as Zamora is a Spanish corporation.  See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) (noting that the Convention "applies in this case because [petitioner] is a foreign corporation").  Moreover, because the award in this case was entered in the United States,[2] "the domestic provisions of the FAA also apply."  Id.; see also F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc., 730 F. Supp. 2d 318, 325 (S.D.N.Y. 2010)

---

[2]       The arbitration hearing leading to the Final Award was conducted in New York, and the Final Award was issued pursuant to New York Law.  (See docket entry no 30-4, at 4-5).

("However, because the Final Award was entered in New York, the domestic provisions of the FAA, to the extent they vary from the Convention's terms, must also be considered.").

Zamora contests both the timing and the method of Deutsch's service of the Petition.  First, as for the timing of service, "[u]nder the FAA, notice of a motion to vacate an arbitral award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  Dalla-Longa v. Magnetar Cap. LLC, 33 F.4th 693, 695 (2d Cir. 2022) (citing 9 U.S.C. § 12).  According to Deutsch, Zamora was served with the Petition on December 23, 2021 (just under three months after entry of the 2021 Award).  Specifically, on December 23, 2021, Deutsch sent a copy of the Petition to Zamora by four separate methods: (1) delivery to Zamora's counsel via email and Federal Express; (2) delivery to Zamora itself via email; (3) delivery to Zamora via postal channels (Certified Mail); and (4) delivery to the Central Authority in Spain pursuant to the Hague Convention.  (See docket entry nos. 23-3 (Certified Mail); 36-2 (email); 36-5 (Federal Express); and 23-4 (Spanish Central Authority)).  According to Zamora, it received a copy of the Petition by Federal Express on December 29, 2021, and a copy of the Petition via Certified Mail on January 7, 2022.  (Docket entry no. 49 ¶ 11-12.) Zamora asserts that each of the service methods attempted by Deutsch (email, mail, Federal Express, and delivery to the Central Authority) was untimely, improper, and legally insufficient.

Service on a defendant in a foreign country is governed by Federal Rule of Civil Procedure 4(f),[3] which provides that an "individual in a foreign country" may be served as follows:

---

[3]     Rule 4(f) governs service in both civil actions and proceedings to confirm or vacate an arbitral award.  See Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A., 49 F.4th 802, 812 (2d Cir. 2022) ("Rule 4 sets forth the basic procedures for serving process in connection with arbitral awards."); Matter of Arb. between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp., 146 F.R.D. 64, 67

**(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

**(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

> **(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> **(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or
> **(C)** unless prohibited by the foreign country's law, by:
>> **(i)** delivering a copy of the summons and of the complaint to the individual personally; or
>> **(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

**(3)** by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).[4]

<u>Hague Convention Service under Rule 4(f)(1)</u>

The Court first analyzes whether service has been accomplished under Rule 4(f)(1), which allows for service by any "internationally agreed means of service," such as the

---

(S.D.N.Y. 1993) (explaining that, because the FAA "does [not] give any direction for service on a foreign party . . . recourse must be had to the Federal Rules of Civil Procedure" (specifically, Rule 4) to determine whether service on a foreign defendant is proper in connection with arbitral awards); <u>In re Coudert Bros. LLP</u>, No. 06-12226-RDD, 2017 WL 2911589, at *4 (Bankr. S.D.N.Y. July 6, 2017) (explaining that, when a petitioner seeks to serve "a respondent with notice of a motion to confirm an arbitration award in a district that does not lie within a judicial district of the United States," then service should be accomplished "as a foreign defendant would be served with process pursuant to Rule 4").

[4] The rules enumerated in Rule 4(f) apply to service on foreign corporations (such as Zamora), except that "personal delivery under f(2)(C)(i)" is not permitted. Fed. R. Civ. P. 4(h)(2); <u>see also</u> <u>Grp. One Ltd. v. GTE GmbH</u>, 523 F. Supp. 3d 323, 340-41 (E.D.N.Y. 2021) ("[Rule 4(h)] confirms that service of process on foreign corporations may be made using the same methods outlined in [Rules] 4(f)(1) and 4(f)(3), among other provisions.").

Hague Convention.  Here, both the United States and Spain are parties to the Hague Convention, which serves as "an applicable international agreement governing the service of process across national lines."  Vega, 339 F.R.D. at 216.  "The purpose of the Hague Convention 'is to simplify, standardize, and generally improve the process of serving documents abroad,' and it 'specifies certain approved methods of service and preempts inconsistent methods of service whenever it applies.'"  Id. (quoting Water Splash, Inc. v. Menon, 581 U.S. 271, 273 (2017)).  "The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (2) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state."  Burda Media, Inc. v. Viertel, 417 F.3d 292, 300 (2d Cir. 2005).

The service method relevant here is Central Authority service.  "Under the Hague Convention, service through a country's Central Authority is the primary method of service."  Grp. One Ltd. v. GTE GmbH, 523 F. Supp. 3d 323, 342 (E.D.N.Y. Feb. 3, 2021).  The Hague Convention "mandates that each contracting country designate a Central Authority which undertakes to receive requests for service from other countries party to the agreement."  Vega, 339 F.R.D. at 216 (alterations omitted).  The process of service through a country's Central Authority has been explained by the Second Circuit as follows:

> Under this method, process is first sent to the Central Authority of the foreign jurisdiction in which process is to be served . . . The Central Authority must then arrange to have process served on the defendants.  Upon completion of service the Central Authority must complete a Certificate detailing how, where, and when service was made, or explaining why service did not occur. Finally, the completed Certificate is returned to the applicant.

Burda, 417 F.3d at 300 (citations omitted).

Here, Deutsch asserts that, on December 23, 2021, it served copies of the Petition upon Zamora via the Subdirección General de Cooperación Jurídica Internacional, Dirección General de Cooperacion Jurídica Internacional y Derechos Humanos, Ministerio de Justicia, Calle San Bernardo 62, 28071, Madrid—which is a regional office of Spain's central authority. (Docket entry no. 23 ¶¶ 14-15, Exhibits D and E). Zamora asserts that Deutsch's attempt to serve it through Spain's central authority was improper and untimely because, even if Deutsch did make such a request for service, the service was never completed—to date, Zamora has still not received a copy of the Petition from the Spanish Central Authority (nor has it received any Certificate stating that service was accomplished).

Courts in the Second Circuit have exercised discretion to deem service of process properly perfected when a litigant makes a good faith effort to comply with the service requirements of the Hague Convention. For example, in the Burda case, the Second Circuit concluded that the plaintiff had properly effectuated service on the defendant through France's central authority despite the failure of the French central authority "to return a formal certificate" signifying that service had been completed. Burda, 417 F.3d at 301. The Court explained that, while the Hague Convention "carefully articulates the procedure which a litigant must follow in order to perfect service abroad . . . it does not prescribe the procedure for the forum Court to follow should an element of the procedure fail." Id. Accordingly, the Court reasoned that "failure to comply strictly with the Hague Convention is not automatically fatal to effective service," because the Hague Convention, together with Rule 4, "stresses actual notice, rather than strict formalism." Id. (citation omitted). The Court deemed service completed because the plaintiff had "attempted in good faith to comply with the Hague Convention" by making a request for service upon France's central authority, and because it "was certainly not [plaintiff's]

fault that the French authorities did not return a formal certificate." Id.  Moreover, the Court also found it relevant that the defendant "suffered no injustice" due to this error, because the defendant "[did] not dispute having received the complaint in this action." Id. at 301-02.

Other courts in this Circuit have reached similar conclusions. See e.g., Unite Nat'l Ret. Fund v. Ariela, Inc., 643 F. Supp. 2d 328, 335 (S.D.N.Y. 2008) ("Thus, where the plaintiff made a good faith attempt to comply with the [Hague] Convention, and where the defendant received sufficient notice of the action such that no injustice would result, it is within the Court's discretion to deem service of process properly perfected."); Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 627 (S.D.N.Y. 2012) (deeming service valid where "Plaintiffs have demonstrated that they complied with the Hague Convention procedures," such that "any failure of compliance was solely [owing to] the Central Authority['s] [failure] to participate in the process," and where the foreign defendant "was aware of the litigation and had actual notice of the suit"); Garg v. Winterthur, 525 F. Supp. 2d 315, 322 (E.D.N.Y. 2007) ("Thus, where the plaintiff made a good faith effort to comply with the [Hague] Convention, and where the defendant received sufficient notice of the action such that no injustice would result, the court may deem service of process properly perfected.").

Such considerations are likewise relevant here: Deutsch made a good faith effort to comply with the Hague Convention by making a timely request for service with Spain's Central Authority; the Spanish Central Authority apparently never completed the service request (through no fault of Deutsch); but Zamora was not prejudiced because it does not dispute receiving actual notice of the Petition. See Arista Recs. LLC v. Media Servs. LLC, No. 06-CIV-15319-NRB, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008) (noting that "as a practical matter, the purpose of the service requirement has already been accomplished" because the

defendant "has actual notice of this action").  It would thus be within the Court's discretion to

deem service properly perfected under the Hague Convention, and the Court does so.

<u>Alternative Service Under Federal Rule of Civil Procedure 4(f)(3)</u>

In addition, for the avoidance of doubt as to the validity of service, the Court also

addresses Deutsch's request for nunc pro tunc approval of its alternative service methodology

under Rule 4(f), which also gave Zamora timely actual notice of the Petition. "[A] plaintiff is not

required to attempt service through the other provisions of Rule 4(f) [such as Rule 4(f)(2)] before

the court may order [alternative] service pursuant to Rule 4(f)(3)," because "there is no hierarchy

among the subsections in Rule 4(f)."  <u>See</u> <u>Group One</u>, 523 F. Supp. 3d at 341 (collecting cases).

Moreover, "numerous courts have authorized alternative service under Rule 4(f)(3) even where

the Hague Convention applies."  <u>Jian Zhang v. Baidu.com Inc.</u>, 293 F.R.D. 508, 512 (S.D.N.Y.

2013) (collecting cases).  In other words, "nothing in Rule 4(f) itself or controlling case law

suggests that a court must always require a litigant to first exhaust the potential for service under

the Hague Convention before granting an order permitting alternative service under Rule

4(f)(3)."  <u>In GLG Life Tech Corp. Sec. Litig.</u>, 287 F.R.D. 262, 266 (S.D.N.Y. 2012).

This Rule permits a court to order service "by other means not prohibited by

international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  Alternative service under

Rule 4(f)(3) is proper so long as the ordered means of service "(1) is not prohibited by

international agreement; and (2) comports with constitutional notions of due process."  <u>Stream</u>

<u>SICAV v. Wang</u>, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (citation omitted).  Although these

two conditions are the only "limitations evident from the text" of Rule 4(f)(3), some courts in

this Circuit have imposed two additional requirements—that the plaintiff "show that they have

reasonably attempted to effectuate service on the defendants" and that "the circumstances are

such that the district court's intervention is necessary." Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., No. 03-CIV-8554-LTS-JCF, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005) (citations omitted); see also Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (noting that "courts in the Southern District of New York generally impose" these "two additional threshold requirements before authorizing service under Rule 4(f)(3)"). Courts have found these requirements useful "in order to prevent parties from whimsically seeking alternative means of service and thereby increasing the workload of the courts," before any real effort has been made to accomplish service. Exp.-Imp. Bank, 2005 WL 1123755, at *4 (citation omitted).

"The decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'" United States v. Lebanese Canadian Bank, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (citation omitted); see also U.S. S.E.C. v. Shehyn, No. 04-CIV-2003-LAP, 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008) ("[Rule 4(f)(3)] gives considerable discretion to the district courts to fashion methods for appropriate international service."). Alternative service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief"—rather, it is "merely one means among several which enables service of process on an international defendant." Stream SICAV, 989 F. Supp. 2d at 278 (citation omitted). Moreover, the "Second Circuit strongly prefers that litigation be resolved on the merits, rather than by dismissal" due to service technicalities, especially when the defendant "did receive notice of the complaint and has not been prejudiced by any defects in service of process." Aqua Shield, Inc. v. Inter Pool Cover Team, No. 05-CV-488-CBA, 2007 WL 4326793, at *2 (E.D.N.Y. Dec. 7, 2007) (quoting In re Initial Public Offering Sec. Litig., 358 F.Supp.2d 189, 209 (S.D.N.Y. 2004)).

The Court concludes that the various service methods utilized by Deutsch, combined with evidence that Zamora received timely actual notice of the Petition, are sufficient to establish the propriety of authorizing alternative service upon Zamora nunc pro tunc. The service methods utilized by Deutsch—namely, service via mail, email, international courier, and through Spain's Central Authority—each comported with international law and due process requirements.

First, the means of service utilized by Deutsch were not "prohibited by international agreement." Stream SICAV, 989 F. Supp. 2d at 278. Deutsch sent copies of the Petition directly to Zamora via both Federal Express and Certified Mail, and Deutsch also made a request for service via Spain's Central Authority. (Docket entry nos. 44-11 ¶ 10; and 23). Zamora does not contend that service by mail is prohibited by any international agreement, and indeed "[t]he Court is also unaware of any international agreement to which Spain is a signatory that prohibits service by registered mail or email." Aircraft Engine Lease Fin., Inc. v. Plus Ultra Lineas Aereas, S.A., No. 21-CIV-1758, 2021 WL 6621578, at *2 (S.D.N.Y. Apr. 23, 2021). The Hague Convention specifically permits service by mail, so long as the "receiving state has not objected to service by mail" and "service by mail is authorized under otherwise-applicable law." Water Splash, Inc. v. Menon, 581 U.S. 271, 284 (2017). Article 10 of the Hague Convention specifically provides that the Convention does "not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad" "[p]rovided the State of destination does not object," and "Spain has not objected to service by mail." Aircraft Engine, 2021 WL 6621578, at *2; see also Convergen Energy LLC v. Brooks, No. 20-CV-3746-LJL, 2020 WL 4038353, at *5 (S.D.N.Y. July 17, 2020) ("Spain has not opposed Article 10(a) and therefore, has not opposed service of judicial documents by postal channels."). Service by mail

is "authorized under otherwise-applicable law."  See Convergen, 2020 WL 4038353, at *5

("Rule 4(f)(3) is the otherwise-applicable law, and it authorizes any other means of service . . .

including service by mail.")  Accordingly, the Court finds that none of the service methods at

issue here (mail, Federal Express, email, and service via the central authority) was prohibited by

international agreement.[5]

        Second, the means of service utilized by Deutsch comported with notions of

constitutional due process.  Stream SICAV, 989 F. Supp. 2d at 278.  "The Constitution itself

does not prohibit any particular means of service under Rule 4(f) so long as the service is

reasonably calculated to provide interested parties notice of the action and the opportunity to be

heard."  United States v. Machat, No. 08-CIV-7936-JGK, 2009 WL 3029303, at *3 (S.D.N.Y.

Sept. 21, 2009); see also Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)

(due process requires "notice reasonably calculated . . . to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections").  As for

---

[5]    Zamora argues that service via mail and email is not proper under local Spanish laws—
but this is not the relevant inquiry here.  A plaintiff seeking authorization for Rule(f)(3)
service need not "demonstrate that [service via mail or email] is authorized . . . by
Spanish law to seek relief under Rule 4(f)(3) . . . they must simply allege that such
service is not prohibited by international agreement."  Convergen, 2020 WL 4038353, at
*6.  "In fact, as long as court-directed and not prohibited by an international agreement,
service of process under Rule 4(f)(3) may be accomplished in contravention of the laws
of the foreign country."  Exp.-Imp. Bank, 2005 WL 1123755, at *4 (quoting Rio
Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002)).

service by mail,[6] mail service satisfies due process when the mail is reasonably likely to be received by the recipient at the address it is sent to, or when it is actually marked as delivered. See, e.g., Aircraft Engine, 2021 WL 6621578 at *2-3 (concluding that sending "registered mail to [the] defendant's last-known address" satisfied "due process requirements," where the defendant's "address and its accuracy is not at issue" and prior mail sent to that address in the litigation had been "marked as delivered"); Shehyn, 2008 WL 6150322 at *3 ("One factor in considering whether due process is satisfied is whether a defendant . . . possesses some knowledge of the pending lawsuit against her."). Here, the parties have proffered a declaration and exhibit demonstrating that the Petition was successfully delivered to Zamora's address in Spain. (Docket entry nos. 49 ¶ 11-12; 49-4.)

Service by email comports with due process where a plaintiff demonstrates that the "email is likely to reach the defendant," and when the movant "supplie[s] the Court with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address." Convergen, 2020 WL 4038353, at *6-7 (citations omitted). Deutsch asserts that it accomplished email service means two means: (1) emailing the Petition directly to Emilio Restoy, the managing director at Zamora; and (2) emailing the Petition to Zamora's US counsel, Pavia & Harcourt. With respect to the email service on Mr. Restoy, Deutsch has failed to supply any facts indicating that Mr. Restoy would have been likely

---

[6]     Zamora argues that service by mail was untimely under the three-month FAA limitations period. Zamora notes that, although the Petition was postmarked on December 23, 2021, Zamora did not receive the mailings until after the limitations period had run. The Court does not find this fact to be dispositive. First, the Second Circuit has concluded that "service by mail" is "accomplished when the envelope is deposited at a post office or in a mail box," not when the envelope is actually received. See Greene v. WCI Holdings Corp., 136 F.3d 313, 315 (2d Cir. 1998); see also Fed. R. Civ. P. 5(b). Second, as explained below (infra at 16-18), Deutsch effectuated timely service by email on December 23, 2021, in satisfaction of Rule 4(f)(3).

to receive emails at the address that Deutsch used—for example, Deutsch has not proffered any evidence of where this email address was drawn from; whether the parties had previously communicated with Restoy via this email address; or when Restoy was last known to use this email address.  See U.S. S.E.C. v. China Intelligent Lighting & Elecs., Inc., No. 13-CIV-5079-JMF, 2014 WL 338817, at *2 (S.D.N.Y. Jan. 30, 2014) (plaintiff did not make adequate showing that service via email was "likely to reach the defendant," where "the only evidence [plaintiff] present[ed]" with respect to the email address was "an email copied to that address," and plaintiff produced no evidence that might "link the email address" to the defendant or demonstrate that the defendant "still uses" that email address).  The Court therefore cannot conclude that the service on Mr. Restoy was sufficient or effective.

As for email service on Zamora's counsel, "service on a foreign defendant through his American lawyer" satisfies due process where there has been "adequate communication between the foreign defendant and counsel."  Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 119 (S.D.N.Y. 2010).  The primary consideration is whether service on counsel is reasonably "likely to apprise defendants of the action."  Id. at 116 (citation omitted).  Here, after Deutsch emailed a copy of the Petition to Zamora's US counsel, Pavia & Harcourt, the firm acknowledged receipt of the email but declined to say whether the firm would be "able to accept service of the [Petition]" on behalf of Zamora because the firm had not yet consulted with Zamora regarding the Petition and "cannot even represent . . . that [the firm] will be representing [Zamora] in this matter."  (Docket entry no. 49-1.)  The Court finds that such email communication was reasonably likely to apprise Zamora of the litigation, given the fact that (1) Pavia & Harcourt has continuously represented Zamora in connection with its disputes with Deutsch dating back to 2017; (2) the firm represented Zamora in the underlying

arbitration (which is at the heart of the dispute in this case); (3) the firm is currently representing

Zamora in this action; and (4) Zamora does not contest that it received actual notice of the

Petition.  See, e.g., Washington State Inv. Bd. v. Odebrecht S.A., No. 17-CV-8118-PGG, 2018

WL 6253877, at *5 (S.D.N.Y. Sept. 21, 2018) (service on defendant via counsel was proper

where the law firm previously "represented [defendant] in a related criminal case" and also

"represented [defendant] in a recent securities fraud class action in this district"); Mattel, Inc. v.

Animefun Store, No. 18-CIV-8824-LAP, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020)

(service on defendants via counsel was proper where "it can hardly be said that service by email

failed to apprise the [defendants] of the initiation of this litigation" as plaintiff "received

registered receipts" confirming that the email had been delivered and counsel responded and

"confirmed the [defendant's] knowledge of this action"); Jian Zhang v. Baidu.com Inc., 293

F.R.D. 508, 515 (S.D.N.Y. 2013) (finding that service on defendant's counsel "would satisfy the

requirements of due process, as [defendant] has actual notice of this lawsuit and there is evidence

of 'adequate communication' between [defendant] and counsel in any event" (citation omitted)).

Thus, Deutsch's service by mail and email comported with due process.

Finally, Deutsch has shown that it "reasonably attempted to effectuate service on

the defendant" and that "the circumstances are such that the court's intervention is necessary."

Sulzer, 312 F.R.D. at 331-32.  Deutsch made reasonable efforts to serve Zamora via four

different channels (email, Certified Mail, Federal Express, and Central Authority Service); and

Zamora does not contest that it received actual notice of the litigation.  See Exp.-Imp. Bank,

2005 WL 1123755, at *4-5 (alternative service proper where plaintiff had "repeatedly attempted

to effect service" on foreign defendant through multiple channels, such as international mail and

a service agent, and "alternative-service by an international courier ha[d] already proven

effective").  The Court further finds that the circumstances are such that the Court's intervention is appropriate due to the delays of the Spanish Central Authority in finalizing service to Zamora. In the context of Hague Convention service via a foreign nation's central authority, "[c]ourts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."  Washington State Inv. Bd., 2018 WL 6253877, at *6 (collecting cases); see also Sulzer, 312 F.R.D. at 332 (permitting alternative service where the plaintiff "timely attempted service through the Hague Convention" via the Chinese Central Authority and had waited "nearly eight months" without receiving "indication of when service might be effectuated" by the central authority).

Finally, the Court finds that it is appropriate to authorize the alternative service nunc pro tunc, validating the service means that Deutsch has already utilized.  See Shehyn, 2008 WL 6150322, at *4  ("[S]o long as a plaintiff uses diligent efforts to effect service, there is no time limit by which she must appeal to a US court for service by alternative means after receiving no response from a foreign Central Authority." ); Exp.-Imp. Bank, 2005 WL 1123755, at *5 (granting the plaintiff's "motion to declare service valid nunc pro tunc" where plaintiff made reasonable efforts to effectuate service, defendant had actual notice of the litigation, and all requirements of Rule 4(f)(3) were met).  The Court accordingly grants Deutsch's motion to declare service valid nunc pro tunc pursuant to Rule 4(f)(3).[7]

---

[7]     Because the Court concludes that alternative service is proper under Rule 4(f)(3), the Court declines to address the parties' arguments regarding service under the American Arbitration Association service rules.

Motion to Dismiss the Petition on the Merits

Having determined that Zamora was properly served, the Court now turns to the merits of Deutsch's Petition to Vacate the 2021 arbitration award that was issued in favor of Zamora.  Zamora moves to dismiss the Petition on the merits, pursuant to Federal Rule of Civil Procedure 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a pleading initiating a matter must contain "enough facts to state a claim to relief that is plausible on its face.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in favor of the non-moving party.  See Roth v. Jennings, 489 F.3d 499, 503 (2d Cir. 2007).  "[E]xtrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint."  DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).

"A court reviewing an arbitration award under the FAA can confirm and/or vacate the award, either in whole or in part."  Scandinavian, 668 F.3d at 71.  A petition to vacate brought under the FAA "is not an occasion for de novo review of an arbitral award . . . a court's review of an arbitration award is instead 'severely limited,'" and "in order to obtain vacatur of the decision of an arbitral panel under the FAA, a party 'must clear a high hurdle.'"  Id. at 71-72 (citations omitted).  "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing" that the award "falls within a very narrow set of circumstances" that

would permit vacatur.  See Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); see also Porzig

v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007) (noting that the

"standard of review for arbitral awards" is "extremely deferential" in order to "encourage and

support the use of arbitration by consenting parties").

The FAA empowers courts to vacate an arbitral award on several grounds.  See 9

U.S.C. § 10(a) (setting out statutory grounds for vacatur).  Deutsch argues that two particular

grounds are relevant here: manifest disregard of the law[8] and failure to render a final and definite

award.  Specifically, Deutsch argues that the 2021 Award was issued in manifest disregard of the

law because the panel ignored relevant res judicata and contract law principles, and that the 2021

Award was so unclear and ambiguous that remand is required for clarification.  The Court

addresses these arguments in turn.

### Manifest Disregard

An arbitral award may be vacated "if it exhibits a manifest disregard of the law."

Porzig, 497 F.3d at 139.  Courts in the Second Circuit employ a three-part inquiry to determine

whether an arbitration award was issued in "manifest disregard" of the law:

(1) Whether the law that was allegedly ignored was clear and explicitly applicable
to the matter before the arbitrators;
(2) Whether the law was, in fact, improperly applied, leading to an erroneous
outcome; and
(3) Whether the arbitrators actually possessed knowledge of the law and its
applicability to the dispute.

---

[8]     The Court notes that, although "manifest disregard" is not one of the express categories
set out in the statute, the Second Circuit (and many other courts) have recognized that
manifest disregard is a "judicial gloss on the specific grounds for vacatur enumerated in
section 10 of the FAA," and that manifest disregard "remains a valid ground for vacating
arbitration awards." Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d
Cir. 2008), rev'd and remanded on other grounds, 559 U.S. 662 (2010).

F. Hoffman, 730 F. Supp. 2d at 326.

Under this standard, "to justify vacatur, the arbitrator 'must appreciate the existence of a clearly governing legal principle but decide to ignore or pay no attention to it.'" F. Hoffman, 730 F. Supp. 2d at 326-27 (citation omitted). "The party seeking vacatur bears the burden of proving manifest disregard." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002). Under the manifest disregard standard, a court "should enforce an award as long as 'there is a barely colorable justification for the outcome reached,' even where 'the court is convinced that the arbitration panel made the wrong call on the law.'" F. Hoffman, 730 F. Supp. 2d at 326. This standard is "highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003).

Deutsch argues here that the 2021 Award was issued in manifest disregard of the law and that the 2021 panel disregarded the law by ignoring the allegedly preclusive effect of the prior 2019 Award. Deutsch relies on the principle of collateral estoppel (also known as issue preclusion), a doctrine which can act to bar litigation of an issue in a new legal proceeding[9] when:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) resolution of the issue was necessary to support a valid and final judgment on the merits.

---

[9]     "[C]ollateral estoppel can be predicated on arbitration proceedings." Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998); see also Lobaito v. Chase Bank, No. 11-CIV-6883-PGG, 2012 WL 3104926, at *3 (S.D.N.Y. July 31, 2012), aff'd, 529 F. App'x 100 (2d Cir. 2013) ("The principle of res judicata applies equally when the prior adjudication is an arbitration[.]").

Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (citation omitted).

  In addition to these four factors, "a court must satisfy itself that application of the doctrine is fair," and "an adjudicator is generally accorded 'broad discretion' in determining whether or not collateral estoppel should apply in a given case."  Bear, Sterns, 409 F.3d at 91-92 (citation omitted).  Thus, a party who argues that an arbitrator has made an erroneous collateral estoppel decision "runs up against the deference afforded arbitrators under the 'manifest disregard' standard as well as the 'broad discretion' generally given adjudicators in determining whether collateral estoppel is fair."  Id. at 92.  In other words, it is uncertain whether it is even possible for "an arbitral panel [to] manifestly disregard the law by denying a motion that is addressed to its discretion and that is subject to considerations of fairness" such as a collateral estoppel issue.  Id.

  Deutsch contends that the 2021 Award manifestly disregarded the law by failing to afford preclusive effect to three critical findings of the prior panel: (1) the prior panel's finding that Deutsch was entitled to an "undisputed" contractual remedy under the LLC Agreement—namely, Zamora's buyout of Deutsch's membership interest in the trademark holding company; (2) the prior panel's finding that Zamora's 2018 termination notice was invalid and without cause; and (3) the prior panel's finding that Deutsch's wine purchases during 2017 and 2018 had met the minimum purchase requirements under the Distribution Agreement.  The Court addresses each of these points in turn.

  As to the first finding of the prior panel cited by Deutsch (regarding the buyout right in the trademark holding company), Deutsch argues that the 2021 panel ignored the findings of the prior panel with regard to Deutsch's buyout right in the LLC Agreement.  The

Court finds that Deutsch has not shown any manifest disregard of the law by the 2021 panel, as Deutsch has not identified a valid basis for collateral estoppel because the 2021 panel did not conclusively rule on this matter.  As the 2021 Award explained:

> First, the prior panel did not hold, as [Deutsch] contends, that the 2018 Termination was a termination without cause that "triggered [Zamora's] contractual obligation to buy out [Deutsch's] membership interests in BRB Holdings for fair market value" under the [LLC Agreement]. <u>The prior panel's award does not discuss the buyout right.</u>  Therefore, the undersigned Panel finds that there is no basis for [Deutsch's] argument that the findings of the prior panel require this Panel to order the exercise of the buyout right or entitle [Deutsch] to damages.

(2021 Award at 3) (citation omitted, emphasis added).

As for the second finding of the prior panel cited by Deutsch—that Zamora's 2018 termination notice was invalid and without cause—Deutsch argues that the 2021 panel failed to properly take this finding into account when it ruled that Deutsch was not owed any further relief owing to Zamora's invalid termination.  The Court finds that Deutsch has not carried its burden to show manifest disregard for the law because the 2021 panel did not clearly violate any principles of res judicata or contract law.  As the 2021 Award explained:

> The prior arbitration panel in the 2019 Award determined that there was no valid cause for the purposed termination of Deutsch's distributorship in 2018 ("the 2018 Termination"). This finding is binding on this panel. The prior panel, however, did not find, as [Deutsch] asserts, that [Zamora] committed a breach or repudiation of the Distribution Agreement that entitles [Deutsch] to recover damages. The only breach of contract found by the previous panel—[Zamora's] failure to transfer [the trademark]—was remedied by an order of specific performance [by the prior panel]. Deutsch makes no attempt to show that the specific performance remedy was insufficient to make it whole for this breach.

(2021 Award at 2) (citation omitted).

The Award does not evidence, and Deutsch has not identified, any clear unwillingness or refusal to apply relevant law.  Cf. Duferco, 184 F. Supp. 2d at 275 (holding that while arbitral panel's conclusion in interpreting a contract was "arguably indicative of legal error on the part of the [panel], such error is not grounds for vacatur of the award" because "mere error in the law or failure on the part of the arbitrators to understand or apply the law is not sufficient to establish manifest disregard") (citation omitted).

As for the third finding of the prior panel cited by Deutsch—that Deutsch's wine purchases during 2017 and 2018 had met the minimum purchase requirements under the Distribution Agreement—Deutsch argues that the 2021 panel incorrectly determined that it was not bound by the 2019 panel's conclusions on this issue.  In considering whether the 2019 Award held preclusive effect as to the amount of wine purchases, the 2021 panel engaged in the following analysis:

> [Deutsch] . . . seeks to declare the 2019 Termination invalid on res judicata grounds. That motion is also denied. The prior panel determined nothing about the 2019 Termination, as it made clear in the 2019 Award, declining to consider "issues that arose after the evidentiary hearing in this matter."[10]  Neither aspect of res judicata—claim preclusion or issue preclusion—is applicable here. There can be no claim preclusion, because the claims decided in the previous arbitration are not the same as those asserted in this one. [Deutsch] also relies on issue preclusion, and specifically on the finding of the 2019 Award as to the number of cases of Rioja Ramon Bilbao wine purchased by Deutsch in fiscal year 2018. This finding, however, was not necessary to the decision in the prior arbitration, because to justify the 2018 termination [Zamora] would have had to show a shortfall in purchases for two consecutive years; [Zamora] could not do so for 2017. Therefore, proving a shortfall in 2018 purchases alone—by virtue of certain purchases not counting—would not have changed the result. Thus at least one of the prerequisites for issue preclusion—that the issue determined in the prior proceeding must have been necessary to the result—is not met.

(2021 Award at 3-4 (citations omitted).)

---

[10]    The 2019 Termination occurred after the 2019 evidentiary hearing had concluded.

The Court concludes that Deutsch has not carried its burden of showing that this issue preclusion analysis by the 2021 panel amounted to manifest disregard of the law.  Due to the discretionary nature of the collateral estoppel doctrine, it is extremely difficult for a litigant to show that a tribunal manifestly disregarded the law in its application of preclusion doctrines.  See, e.g., Bear Stearns, 409 F.3d at 92 (concluding that arbitration panel's decision to not apply collateral estoppel doctrine "did not amount to manifest disregard of the law" because "[i]n view of the differing results reached by different [prior] panels, the arbitrators had discretion to apply collateral estoppel or not").  Here, the 2021 panel was clearly aware of the relevant res judicata principles and applied them in a rational manner.

Further, to the extent that Deutsch challenges this finding by the 2021 panel as containing incorrect findings of fact (or as misinterpreting the findings of fact made by the prior panel),[11] such an argument is not an appropriate ground for vacating an arbitration award.  See Milk Wagon Drivers & Dairy Emps. v. Elmhurst Dairy, Inc., 14 F. Supp. 3d 90, 96 (E.D.N.Y. 2014) ("[D]isagreement with an arbitrator's fact-finding is not an appropriate ground for vacating an arbitration award."); United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987) ("[A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them."); Wallace, 378 F.3d at 193 ("[T]he Second Circuit does not recognize manifest disregard of the [factual] evidence as a proper ground for vacating an arbitrator's award . . . [a] federal court may not conduct a reassessment of the evidentiary record.") (citations omitted)); Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280, 290 (S.D.N.Y. 2007) ("[A]t bottom [the petitioner's] challenge basically reflects not an invalidating flaw in the

---

[11]     For example, Deutsch asserts that the 2021 panel ignored a certain data table setting out the quantities of Deutsch's wine purchases (JX-80), which the 2019 panel had cited and discussed in its decision.  (See docket entry no. 45, at 28-30.)

Award, but [an] instance of [the petitioner's] quarrel with the Arbitrator's factual findings, which

not a sufficient justification to reverse an arbitral decision.").

Accordingly, Deutsch has failed to show manifest disregard of the law in any of

the challenged aspects of the 2021 Award.

Final and Definite Award

Next, Deutsch challenges the 2021 Award and the Related Order under 9 U.S.C.

section 10(a)(4), which provides that an award may be vacated "where the arbitrators . . . so

imperfectly executed [their powers] that a mutual, final, and definite award upon the subject

matter submitted was not made."  Deutsch asserts that the orders in the 2021 Award were so

ambiguous and unclear that no final and definite award was made.  Because of these alleged

ambiguities, Deutsch requests that the 2021 Award be vacated, or in the alternative, that this

matter be remanded to the arbitration panel for clarification.

Deutsch points out several alleged ambiguities in the 2021 Award, arguing that:

(1) the 2021 Award did not make clear whether the prior panel's factual findings in the 2019

Award were binding in future proceedings; (2) the 2021 Award did not make clear whether it

concluded that Deutsch met its Purchase Objectives (pursuant to the Distribution Agreement)

during 2017, 2018, or both; and (3) the 2021 Award did not address Zamora's counsel's prior on-

the-record stipulations regarding the accuracy of Deutsch's purchase data.

The Court first notes that the mere existence of inconsistencies or ambiguities

does not provide a valid basis for vacating an arbitral award.  See Golden Krust Franchising, Inc.

v. Actus Rest. Grp., Inc., No. 20-CV-7321-KMK, 2021 WL 4974808, at *4 (S.D.N.Y. Oct. 26,

2021) (noting that vacatur is only appropriate when an arbitration award is "so ambiguous and

contradictory that [it is] incomprehensible"); <u>Wallace</u>, 378 F.3d at 190 (noting that "internal inconsistencies in the arbitrator's opinion" are not valid grounds for vacating an award) (citation omitted).  The Court accordingly denies Deutsch's request to vacate the 2021 Award for alleged ambiguity.

As for Deutsch's request to remand for clarification, it is true that certain courts have ordered that an unclear award be "remanded to the arbitrators" when there is "sufficient ambiguity" that the court does not "know exactly what it is being asked to enforce."  <u>Americas Ins. Co. v. Seagull Compania Naviera, S.A.</u>, 774 F.2d 64, 67 (2d Cir. 1985); <u>see</u> <u>also</u> <u>Rich v. Spartis</u>, 516 F.3d 75, 83 (2d Cir. 2008) (noting that an "indefinite, incomplete, and ambiguous award" may be remanded for clarification "so that the court will know exactly what it is being asked to enforce") (citation omitted).  The Court concludes that no such circumstances are presented here.  The 2021 Award, together with the Related Order, is sufficiently clear and definite—and accordingly no remand is warranted.

As for whether the prior panel's factual findings were binding in future proceedings, the 2021 Award clearly stated that although "the prior panel's rulings are not dispositive in this case, the parties may rely on those findings as evidence at the hearing, to the extent that they are relevant."  (2021 Award at 4.)  As for whether Zamora's counsel's alleged prior stipulations were binding, the Related Order likewise clearly stated that "[i]f there were admissions in the prior proceedings (such as Ex. 80) that impact [the prior panel's findings], [Deutsch] is free to use them" as evidence in future proceedings.  (Related Order at 2.)  As to whether Deutsch had established that it met its purchase objectives, the Related Order stated that the satisfaction of the purchase objectives was "an open issue that must now be tried to conclusion" in future proceedings.  (<u>Id.</u>)

In declining to remand this matter for clarification, the Court also finds it relevant that the underlying arbitration proceedings are still ongoing, and the arbiters have (to this Court's knowledge) not yet made a final determination as to these issues. It would be inappropriate and inefficient to remand to the panel for clarification of these issues before a final determination has been made.

Accordingly, because Deutsch has not shown that the 2021 Award was issued in manifest disregard of the law (or that it did not amount to a final and definite award), the Court grants Zamora's motion to dismiss the Petition.

CONCLUSION

For the foregoing reasons, Deutsch's motion to authorize alternative service of the Petition nunc pro tunc is granted, and Zamora's motion to dismiss the Petition is granted. This Memorandum Opinion and Order resolves docket entry nos. 4, 38, 46, and 47. The Clerk of Court is respectfully directed to enter judgment dismissing the Petition and close this case.

SO ORDERED.

Dated: New York, New York
      August 30, 2023

                            /s/ Laura Taylor Swain
                            LAURA TAYLOR SWAIN
                            Chief United States District Judge